IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


VICKI WHITEAKER and
LEONARD WHITEAKER                                                              PLAINTIFFS


V.                                                      CAUSE NO. 3:08-cv-129-MPM-SAA


FRED'S STORES OF TENNESSEE, INC.                                                DEFENDANT


**ORDER**

This cause comes before the court on the motions of defendant Fred's Stores of Tennessee, Inc. ("Fred's") for judgment as a matter of law, for a new trial as to the issue of damages or, alternatively, for remittitur. Plaintiffs Vicki and Leonard Whiteaker have responded in opposition to the motions, and they have filed their own motion for new trial as to Leonard's loss of consortium claim. The court, having considered the memoranda and submissions of the parties, concludes that the jury's verdict should be upheld as to the issue of liability but that a new trial on the issue of damages is in order.

This is a trip and fall case arising out of injuries suffered by plaintiff Vicki Whiteaker on December 23, 2006 when she fell on a corral located in the parking lot of a Fred's store in Southaven, Mississippi. Following a two-day trial, the jury returned a verdict against Fred's on Vicki's negligence claim. The jury found that Vicki suffered $1,150,000 in damages, and it allocated 81% of the fault for these damages to Fred's and 19% to Vicki. Following the required adjustment to the verdict, this court entered a judgment in favor of Vicki in the amount of $931,500.00. The jury returned a defense verdict on the loss of consortium claim asserted by Vicki's husband Leonard. The parties have now filed motions challenging the jury's findings regarding liability and damages.

The court first addresses Fred's motion for judgment as a matter of law as to the issue of liability. "A motion for judgment as a matter of law ... in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Jones v. Kerrville State Hosp.*, 142 F.3d 263, 265 (5th Cir.1998). Judgment as a matter of law is appropriate after "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a). "In evaluating such a motion, the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury." *U.S. Commodity Futures Trading Comm'n v. Dizona*, 594 F.3d 408, 413 (5th Cir.2010).

In seeking judgment as a matter of law, Fred's argues that there is no legal basis for the jury's finding that it acted negligently in this case. This court is of the view, however, that Vicki presented a very strong case at trial, and it candidly advised counsel of this view even before the jury rendered its verdict. Indeed, this court was surprised by how little resemblance the proof at trial bore to the facts represented in Fred's summary judgment motion, which likely should not have been filed at all. In its summary judgment brief, Fred's attempted to portray the corral as itself being a safety device which had been carefully planned and constructed by Fred's management with the well-being of customers in mind. Testimony at trial, however, demonstrated that the corral was actually the *ad hoc* creation of a relatively low-level Fred's employee, the purpose of which was simply to serve as an obstacle which would slow down any shoplifters who were attempting to leave the store without paying for goods.

The proof at trial demonstrated that David Whittington, the Fred's store co-manager who was largely responsible for designing and building the obstacle, did so without consulting any experts or other sources apart from his own untrained imagination. Testimony further

established that none of the witnesses were aware of any comparable structure having been built at any Fred's store - or any other department store - in the United States. This is unsurprising when one considers the rather devastating testimony at trial that the structure was actually built in a *fire lane*. Mr. Whittington testified on re-direct questioning from plaintiffs that:

> Q: Did you block the fire lane by building this?
> A: Yes sir, I guess I did.
> Q: Yeah, so you blocked every ambulance, every fire truck, anybody that would need access to the fire lane, didn't you?
> A: Yeah.
> Q: Okay, is that a very good plan, Mr. Whittington?
> A: No sir.

In the court's view, this testimony negated any possibility that Fred's could portray the corral as being any kind of carefully-planned endeavor. After hearing this testimony, the court was interested to hear exactly what sort of proof of due care Fred's might attempt to produce in its own case, but it elected to not even call a single witness.

It is certainly true that the corral was not invisible, and, unsurprisingly, a large number of customers were able to successfully navigate around it during the several months when it stood intact. This does not mean, however, that Fred's did not act negligently in placing a large obstacle in a location where no reasonable customer would expect it to be, where it had no legal right to be, and where no other store nationwide had (apparently) seen fit to place a comparable structure. In the court's view, a reasonably prudent store owner could anticipate that some customers leaving its store would be less attentive than others or that they would be distracted by such matters as cell phone calls or small children. A store owes a duty of reasonable care to those shoppers as well. The jury did, in fact, hold Vicki 19% at fault for failing to avoid her own injuries, and this assessment strikes the court as being reasonable in light of the testimony at trial. It seems entirely appropriate to this court, however, that the jury held Fred's liable for its role in causing Vicki's injuries.

In seeking to overturn the jury's verdict, Fred's argues that "[i]t is a well-founded principle of Mississippi premises liability law that merely proving the occurrence of an accident on a business premises is insufficient to prove liability; rather Mrs. Whiteaker must demonstrate that Fred's was somehow negligent in the maintenance of its premises." *Huguley v. Imperial Palace of Mississippi, Inc.*, 930 So. 2d 1278 (Miss. App. 2006)(citing *Robinson v. Ratliff*, 757 So. 2d 1098, 1101 (Miss. App. 2000). The court readily agrees that this is the applicable law, which is merely another way of saying that this is a simple negligence case. The court remains of the view, previously stated in its order denying summary judgment, that this case is a "rather prototypical one for resolution by a jury." The primary difference now is that, while it appeared from defendant's summary judgment brief that it might be able to present considerable evidence of due care on its part, it completely failed to deliver on this proof at trial. It seems clear that there was much more "sizzle than steak" in defendant's case, so much so that it chose to not even call the witnesses who were supposedly going to explain the careful and thoughtful manner in which the corral was constructed. The court is quite surprised that Fred's would nevertheless see fit to file another motion for judgment as a matter of law on the issue of liability when it is well aware that the court viewed plaintiffs' case-in-chief as having been a strong one. Regardless of defendant's reasons for filing this motion, it clearly lacks merit.

Apart from the strong evidence in favor of plaintiffs' claim, the fact that the jury approached this case in a fair and impartial manner is evident from the fact that it returned a defense verdict as to the loss of consortium claim asserted by Vicki's husband Leonard. Plaintiffs have filed their own motion for new trial as to the jury's verdict on this issue, but the court concludes that the issue of whether Vicki's injuries resulted in a compensable loss of consortium to her husband is, like the other issues in this case, a classic jury question. The court has no basis to question the jury's verdict on the issue of liability, as to any party, and the

parties' respective motions for judgment as a matter of law and/or a new trial regarding liability will be denied.

The court now turns to Fred's motion for new trial on the issue of damages or, alternatively, for remittitur. Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted ... in any action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Company*, 773 F.2d 610, 612 (5th Cir. 1985). In making a determination that the verdict is against the weight of the evidence, the court weighs all the evidence and need not view it in the light most favorable to the nonmoving party. *Id.* at 613. "A motion for a new trial should not be granted unless the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 838-39 (5th Cir.2004).

While not outrageous or completely indefensible, the jury's assessment of $1,150,000 in damages does strike this court as being rather high. In so concluding, the court acknowledges that Vicki suffered very significant injuries, and it does appear that a large verdict was fully supported by the evidence. Vicki's injuries included a broken right wrist, broken left arm and elbow, broken teeth, a cut to her right leg, and several broken ribs on her left side. Moreover, there was extensive testimony at trial regarding the very considerable amount of pain and suffering which she endured as a result of her accident. Medical testimony at trial also established that Vicki suffered some degree of permanent impairment, most notably from a badly broken elbow which left her with permanent arthritic changes, loss of bone mass and some loss of mobility. Still, a verdict in excess of a million dollars is an extremely large one, and defendant has submitted authority which makes an arguable case that remittitur would be in

order in this case based solely on the amount of the verdict. At the same time, this court is generally very reluctant to substitute its own judgment for that of a jury, particularly on a matter as subjective as the dollar value of a particular plaintiff's pain and suffering. Accordingly, if there were not special circumstances in this case supporting a new trial on damages, then this court would have a very difficult call to make regarding defendant's motion for remittitur.

As it turns out, there are, in fact, special circumstances in this case which clearly suggest that a new trial on damages is in order. In particular, there was evident confusion (expressed in a note to the court) on the part of the jury regarding whether Vicki was entitled to recover for her medical bills in this case, and this fact likely resulted in an excessive verdict. This confusion had as its primary cause plaintiffs' unusual decision to present testimony of extensive medical treatment received by Vicki but nevertheless to not seek to actually recover damages for that treatment. At the jury instruction conference, plaintiffs specifically requested the redaction of the portion of Mississippi Model Jury Instruction § 11:4 which provides for the recovery of "[r]easonable and necessary medical expenses already incurred and those which are reasonably probable to be incurred in the future, if any."

This court has routinely used model instruction § 11:4 in the past, and its provisions are close to being unimpeachable in personal injury cases. Plaintiffs' very unorthodox decision to not seek medical damages was apparently based on concerns regarding outstanding medical liens, which would likely consume any recovery for medical damages. Fred's was only too happy to agree to the redaction, since doing so seemed certain to reduce its potential liability in the case. For its part, this court did not see its role as being to, in effect, force plaintiffs to seek damages which they did not wish to pursue, particularly since all parties were in agreement on this issue.

While the modifications to the jury instructions set the stage for the jury's confusion, this confusion would not have actually occurred if either party had seen fit to clearly explain, during

closing arguments, the damages which Vicki was seeking in this case. In their briefs, both sides point fingers at each other for their failures in this regard, and, in this instance, both sides are correct. Certainly, Fred's should have emphasized to the jury that Vicki was not seeking to recover medical damages, but, for whatever reason, it chose to barely even address the issue of damages in its closing arguments. Plaintiffs seize upon this fact, arguing that defendant is not entitled to a new trial on damages when it did not use its opportunity at trial to present its case to the jury.

While plaintiffs' argument in this regard has some merit, it also serves to minimize their own role in causing the jury's confusion on this issue. Simply stated, plaintiffs were far more forthcoming to this court in conference regarding their desire to not seek medical damages than they were to the jury in this regard during closing arguments. It would be too strong a word to state that plaintiffs sought to *deceive* the jury on this issue, since it was reasonable to assume that Fred's would at least mention plaintiffs' strategy in closing arguments. Still, it does seem fair to state that plaintiffs were not averse to the possibility that the jury might mistakenly award them medical damages under circumstances which would nevertheless give them an arguable defense to medical liens. When this court reviews plaintiffs' requested jury instruction modifications and closing arguments as a whole, it sees an element of dodginess and deliberate vagueness which leaves them in a poor position to disclaim responsibility for the jury's confusion on this issue.

Regardless of the blame for the jury's confusion, it is apparent that it did exist. During deliberations, the jury submitted a note to this court asking whether Fred's had "been paying all medical bills to date." Clearly, the jury would only have been asking about the payment of medical bills if it had received the mistaken impression that they were compensable elements of damages in this case. The court summoned counsel to its chambers to formulate a written

7

response to this question, and it was agreed that the jury should be informed that "[t]here has been no proof in the record that needed bills have been incurred or paid by any party."

Even with this clarification, the court has considerable doubt whether the jurors understood that they should not award medical damages at the time they rendered their verdict.[1] Medical damages are a well-recognized part of any tort lawsuit, and, while there was no proof of the actual payment of medical bills at trial, plaintiffs clearly put on proof that Vicki received very extensive medical treatment as a result of her injuries in this case. Given the lack of clarification at closing argument on this issue, it seems likely that reasonable jurors would have harbored considerable confusion regarding whether medical damages were recoverable, even after the court's response to their written question. In the court's view, this fact, combined with the arguably excessive nature of the jury's verdict, militates in favor of holding a new trial on the issue of damages.

In arguing otherwise, plaintiffs write in their briefs that:

> Defendant's motion continues by describing plaintiffs' decision to forego presenting evidence of medical bills, lost wages and impairment rating as a "clever strategic ploy" while utterly failing to accept any responsibility for its own decision not to introduce this very evidence. It was readily available to both parties. Nothing was hidden from Defendant. Defendant had no objection to Plaintiffs' decision to forego introduction of this evidence, as Defendant likely thought that its exclusion would benefit Fred's. There is no other explanation for why Defendant chose not to introduce this evidence.

The court finds this line of argument by plaintiffs to be less than persuasive.

Plaintiffs are asking this court to affirm a very large verdict in their favor, and, in order to do so, the court needs to be confident that the jury was able to reach an informed verdict in this

---

[1] The court bases this conclusion solely upon a review of the closing arguments transcript, the jury instructions, and the note from the jury, considered in light of the fact that medical damages are ordinarily a part of a civil lawsuit. Fred's initially submitted, but later withdrew, additional information regarding the jury's state of mind at the time of the verdict. All parties appear to agree that this submission was improper, and the court has consciously avoided any consideration of same in issuing this order.

case. Plaintiffs fail to dispute defendant's characterization of their trial approach as being a "clever strategic ploy," and this appears to be an apt characterization of same. Plaintiffs appear to argue that defendant was outmaneuvered at trial, but nowhere do they provide the court with the reassurance it is looking for: namely, that the jury was given the information necessary to do its job properly. This court's role is not to referee a game between two litigants, awarding the "prize" to the side which manages to outmaneuver the other. Rather, its role is to supervise a process whereby the jury is given the information needed to reach a reliable and accurate verdict.

It would have been a simple matter for plaintiffs to clearly explain to the jury during closing arguments the exact nature of the damages they were seeking. Plaintiffs instead chose an approach of deliberate ambiguity, asking the jury to award them not less than one million dollars while providing very little clarification regarding how that sum was arrived at or exactly what element(s) of damages it represented. For its part, defendant essentially ignored the issue of damages altogether in closing arguments. While it can certainly be argued that this was a mistake, it does not alter the fact that the jury went to deliberations having been given very little information regarding how they were supposed to reach a verdict on the issue of damages. Plaintiffs were given an opportunity to address the jury in rebuttal closing arguments, but they provided no additional clarification regarding this issue, as to which they have the burden of proof. Under these circumstances, it is likely that reasonable jurors would have simply assumed that their role was to award the type of damages customarily awarded in civil lawsuits. Given the unusual trial strategy adopted by plaintiffs in this case, this assumption would have been incorrect, but plaintiffs did not even come close to making this point sufficiently clear to the jury.

In light of the foregoing, the court concludes that a new trial regarding damages is in order, and it will ensure that this trial is shorter on clever litigation tactics and longer on fundamentally sound trial practice than the first one. At the new trial, the court will be reluctant

to permit plaintiffs to once again avoid seeking damages for medical bills which Vicki clearly incurred. If it is plaintiffs' intention to once again follow this unusual and arguably misleading trial strategy, then they will need to present this court with authority supporting their right to do so. Even if this court allows plaintiffs to do so, it will take steps to ensure that the jurors harbor no doubt whatsoever that they are to assess damages solely for Vicki's pain and suffering, and nothing more.[2] The court presumes that both sides recognize the areas in which their oral arguments may be improved on the issue of damages, and it is confident that the new trial on this issue will render a verdict which is much more reliable than the one presently before it.

In light of the foregoing, it is ordered that defendant's motion for judgment as a matter of law is denied, defendant's motion for a new trial on damages is granted, and plaintiff Leonard Whiteaker's motion for a new trial on his loss of consortium claim is denied.

SO ORDERED, this the 4th day of February, 2011.

/s/ Michael P. Mills
CHIEF JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

---

[2] At trial, this court noted that Mississippi authority appears to grant plaintiffs an absolute right, if they prevail on the issue of liability, to a hearing regarding the issue of punitive damages. *Bradfield v. Schwartz*, 936 So. 2d 931, 938 (Miss. 2006). Given that the court is re-trying the issue of damages, it will once again grant plaintiffs their right to a *Bradfield* hearing, if they so desire.